UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MCM CAPITAL PARTNERS, LLC, | Case No. 2:15-CV-1154 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SARICOY BAY LLC SERIES 6684 CORONADO CREST, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff MCM Capital Partners, LLC's ("MCM") renewed motion for summary judgment. (ECF No. 70). Defendants Red Rock Financial Services ("Red Rock"), Saticoy Bay LLC Series 6684 Coronado Crest ("Saticoy Bay"), and Coronado Ranch Landscape Maintenance Corporation ("Coronado Ranch") filed responses. (ECF Nos. 72–74). Defendant Coronado Ranch joined the response of Red Rock. (ECF No. 75). MCM submitted a reply. (ECF No. 77).

**I.  Facts**

This case involves a dispute over real property located at 6684 Coronado Crest Avenue, Las Vegas, Nevada 89139 ("the property"). (ECF No. 70 at 4).

On August 22, 2006, Joseph L. Stimach and Sharon L. Stimach obtained a loan from Republic Mortgage, LLC in the amount of $329,000, which was secured by a deed of trust and recorded on August 30, 2006. (*Id.*).

On April 20, 2010, defendant Red Rock, acting on behalf of the HOA, Coronado Ranch, recorded a notice of delinquent assessment lien, stating an amount due of $791.12. (*Id.* at 5). On July 20, 2010, Red Rock recorded a notice of default and election to sell to satisfy the delinquent

**James C. Mahan**
**U.S. District Judge**

assessment lien, stating an amount due of $1,768.77.  (*Id.*).  MCM did not receive either notice as it did not yet have a recorded interest.  *See* (*id.*).

The deed of trust was assigned to BAC Home Loans Servicing LP, on September 20, 2010, and then to MCM via an assignment of the deed of trust, which MCM recorded on February 19, 2015.  (ECF No. 17 at 3).

Then, on March 30, 2015, Red Rock recorded a notice of foreclosure sale, stating an amount due of $4,331.70 and scheduling the sale for May 11, 2015.  (*Id.* at 3–4).  Red Rock mailed a copy of the notice to MCM via first class mail.  (ECF No. 73-9 at 17–19).

On May 11, 2015, Red Rock conducted the foreclosure sale, and defendant Saticoy Bay purchased the property for $21,000.  (ECF No. 17 at 4).  A foreclosure deed in favor of Saticoy Bay was recorded on June 15, 2015.  (*Id.*).

On July 7, 2015, MCM filed the operative complaint, alleging two claims for relief: (1) quiet title judgment against defendants; and (2) unjust enrichment against Saticoy Bay.  (*Id.* at 5–6).

In the instant filing, MCM renews its motion for summary judgment regarding its quiet title claim.  (ECF No. 70).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

**James C. Mahan**
**U.S. District Judge**

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

*A. Claim (2), unjust enrichment*

As an initial matter, MCM's claim (2) for unjust enrichment is dismissed without prejudice for failure to mediate pursuant to NRS 38.310. *See, e.g.*, Nev. Rev. Stat. § 38.310(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555 (Nev. 2013). Subsection (1) of NRS 38.310 provides, in relevant part, as follows:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2). A "civil action" includes any actions for monetary damages or equitable relief. *See* Nev. Rev. Stat. § 38.300(3).

A claim for unjust enrichment qualifies as a "civil action" under NRS 38.300(3) "because it exists separate from the title to land." *McKnight Family, L.L.P.*, 310 P.3d at 559.

At no point in MCM's complaint, or subsequent motion for summary judgment, does MCM allege that mediation under NRS 38.330 has been completed. *See also* (ECF No. 32 at 2). Specifically, there is no document here that contains a sworn statement indicating that the issue set forth has been mediated, but no agreement was obtained. *See* Nev. Rev. Stat. § 38.330(1); (ECF Nos. 17, 70). Consequently, MCM must first submit claim (2) for unjust enrichment to mediation pursuant to NRS 38.310 before proceeding with that claim in this court.

**James C. Mahan**
**U.S. District Judge**

- 4 -

Accordingly, claim (2) for unjust enrichment of MCM's complaint is dismissed without prejudice.

### B. Claim (1), quiet title[1]

MCM seeks to quiet title as to the property and asserts the following five arguments: (1) "the [foreclosure] sale is void under *Shadow Wood* and the Restatement (Third) of property"; (2) "the sale is void because it was conducted in a commercially unreasonable manner"; (3) "the HOA foreclosure sale is void because NRS 116.3116 *et seq.* is facially unconstitutional due to opt-in noticing provisions"; (4) "the HOA foreclosure sale is void because NRS 116.3116 *et seq.* is facially unconstitutional by its failure to require notice of the conditions precedent to the existence of super-priority lien rights"; and (5) "the sale is void because NRS 116.3116 *et seq.* violates the takings clause of the United States and Nevada Constitutions, rendering it void and unenforceable." (ECF No. 70 at 9, 11, 12, 20, and 23).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

---

[1] The 2015 Legislature substantially revised Chapter 116. 2015 Nev. Stat., ch. 266. Because Chapter 116 operates by allowing a foreclosure sale only after specific conditions are met, the court must look at the statutes in effect on the day of the sale: May 11, 2015. *See* Nev. Rev. Stat. § 116.31162 (providing that the association may foreclose its lien by sale after all of the statutory provisions occur); *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, --- P.3d ---, 133 Nev. Adv. Op. 3, at *4 (Nev. 2017) ("Under NRS 116.31162(1), an HOA may foreclose its lien by sale only after it takes certain steps."). As such, the references in this order to statutes codified in Chapter 116 are to the statutes in effect on that date unless otherwise noted.

**James C. Mahan**
**U.S. District Judge**

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

*1.* Shadow Wood *and Restatement (Third) of Property*

MCM asserts that "there are two reasonable interpretations of *Shadow Wood*." (ECF No. 70 at 9). First, any property sold for less than 20% of its fair market value is void because of "gross inadequacy" in sales prices. (*Id.*). MCM further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally . . . a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (*Id.*) (emphasis omitted).

Second, for a foreclosure sale to be void, the sale requires both a grossly inadequate price and "proof of some element of fraud, unfairness, or oppression." *Shadow Wood Homeowners Ass'n. v. N.Y. Cmty. Bancorp,. Inc*., 366 P.3d 1105, 1110 (Nev. 2016). MCM argues that, because

1  the inadequacy of price is so great, a slight showing of unfairness or irregularity is sufficient to
2  justify setting aside the sale. (ECF No. 70 at 10).

3  In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be
4  set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed
5  where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d
6  at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58
7  (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its
8  foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a
9  showing of fraud, unfairness, or oppression." *Shadow Wood*, 366 P.3d at 1112; *see also Long v.
10 Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify
11 setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing
12 *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale
13 foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly
14 inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as
15 accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

16 Despite MCM's assertion to the contrary, the *Shadow Wood* court did not adopt the
17 restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted,
18 or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing
19 the restatement as secondary authority to warrant use of the 20% threshold test for grossly
20 inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009)
21 (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco
22 Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement
23 (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche,
24 LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts
25 section 592A). Because Nevada courts have not adopted the relevant portion of the restatement at
26 issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition
27 to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

28

**James C. Mahan
U.S. District Judge**

- 7 -

1  Nevada has not clearly defined what constitutes "unfairness" in determining commercial
2  reasonableness.  For example, some Nevada cases that have discussed commercial reasonableness
3  state, "every aspect of the disposition, including the method, manner, time, place, and terms, must
4  be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977);
5  *Jones v. Bank of Nev.*, 535 P.2d 1279, 1281 n.2 (Nev. 1975).  This includes "quality of the
6  publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison*
7  *v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–*
8  *Cook*, 714 P.2d 573, 574 (Nev. 1986)).

9  While MCM has identified the first prong of the *Long* test by showing that the property
10 sold for approximately 6.7% of the value of the deed of trust (ECF No. 70 at 9), MCM nevertheless
11 fails to set forth sufficient evidence to show fraud, unfairness, or oppression to satisfy the second
12 prong of the *Long* test to justify setting aside of the foreclosure sale.

13 MCM asserts that there were three irregularities with the sale: (1) it did not indicate it was
14 the result of a super-priority lien; (2) the notices put forth by Red Rock do not identify the super-
15 priority amount of the lien; and (3) the uncertainty of the foreclosure sale depressed the bidding.
16 (*Id.* at 9–10).  However, MCM attempts, without adequate justification, to equate "unfairness"
17 with "irregularities."  (*Id.* at 10).  Regardless of the unfounded substitution of terms, the
18 circumstances in their totality fall short of fraud, unfairness, or oppression.

19 Accordingly, MCM's argument fails because MCM did not set forth evidence of fraud,
20 unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No.
21 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is
22 never enough to demonstrate that the sale was commercially unreasonable; rather, the party
23 challenging the sale must also make a showing of fraud, unfairness, or oppression that brought
24 about the low sale price.").

25 Therefore, the court will deny MCM's motion for summary judgment as it relates to
26 *Shadow Wood* and the Restatement (Third) of Property.
27 . . .
28 . . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

*2. Commercially unreasonable manner*

MCM next asserts that summary judgment in its favor is appropriate because there was a wide discrepancy between the sales price Red Rock obtained and the purported value of the collateral, thus rendering the sale commercially unreasonable. (ECF No. 70 at 11). MCM further asserts that Red Rock did not act in good faith to obtain the highest price. (*Id.*).

Nevada follows the black letter law that "the mere inadequacy of a [foreclosure] sale price is no basis for setting the sale aside." *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963). The fact that a sales price at a public auction is low does not, without other evidence, invalidate an HOA foreclosure sale. *See generally id.*

As previously discussed, the only evidence MCM has presented regarding commercial unreasonability is that the property sold for approximately 6.7% of the value of the deed of trust. (ECF No. 70 at 9).

Therefore, the court will deny MCM's motion for summary judgment as it relates to commercial unreasonability.

*3. Due process*

In its motion, MCM contests that the notice scheme of NRS Chapter 116 facially violates the due process clause. (*Id.* at 12). Accordingly, MCM posits that the foreclosure sale is invalid. (*Id.*).

Specifically, MCM argues that the foreclosure sale should be void because the "opt-in" provision of NRS 116.3116 is facially unconstitutional. (*Id.*).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1157–58 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017).

Additionally, the Ninth Circuit has held that receipt of actual notice deprives a claimant of standing to raise a procedural due process claim. *Wiren v. Eide*, 542 F.2d 757, 762 (9th Cir. 1976).

James C. Mahan
U.S. District Judge

- 9 -

1    Here, MCM received actual notice of the foreclosure sale when Red Rock sent a certified
2 letter of the notice of foreclosure sale to MCM on March 30, 2015. (ECF No. 73-9 at 17–19).
3 After MCM recorded its interest in the property on February 19, 2015, the HOA sent MCM a
4 recorded notice of the trustee's sale on March 30, 2015, via first class mail. (*Id*.). The notice of
5 trustee's sale included (1) the name, address, and telephone number of the trustee conducting the
6 sale; (2) the property at issue; (3) the time, date, and location that the sale will occur; and (4) the
7 amount owed to satisfy the lien. (*Id.*). Whereas notice by mail to ensure actual notice is the
8 minimum constitutional requirement, the notice here specifically laid out procedures to prevent
9 extinguishment of the property interest. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800
10 (1983).

11    As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect
12 inherent in NRS 116.31163(2) because, when the HOA mailed the notice of the foreclosure sale
13 to MCM, it informed MCM that its interest was subject to pendency of action and offered all of
14 the constitutionally required information. (ECF No. 73-9 at 17–19). Thus, MCM received actual
15 notice of the foreclosure sale.

16    Additionally, MCM failed to take action and use the legal remedies available to prevent
17 the property from being sold to a third party—for example, seeking a temporary restraining order
18 and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010,
19 40.060)—MCM now seeks to profit from its own failure to follow the rules set forth in the statutes.
20 *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case
21 before us, we can see no way of giving the petitioner the equitable relief she asks without doing
22 great injustice to other innocent parties who would not have been in a position to be injured by
23 such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior*
24 *Court in & for Yuma Cty*., 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has
25 access to all the facts surrounding the questioned transaction and merely makes a mistake as to the
26 legal consequences of his act, equity should normally not interfere, especially where the rights of
27 third parties might be prejudiced thereby."). *See also SFR Investments*, 334 P.3d at 414 ("But as
28 a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . .

**James C. Mahan**
**U.S. District Judge**

. ."); *see also*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

MCM's pre-foreclosure inactions weigh heavily against equitable relief. Considering the totality of the circumstances at issue here, the court finds it inequitable to set aside the foreclosure sale. Therefore, the court will deny MCM's motion for summary judgment as it relates to due process.

*4. Failure to identify super-priority lien*

MCM posits that NRS 116.3116 is constitutionally vague because it did not require Red Rock to declare the super-priority amount of the lien. (ECF No. 70 at 20–23). Accordingly, MCM asserts that the sale is void. (*Id.*).

At the time of the sale, NRS 116.3116 required only that one "describe the deficiency in payment." Nev. Rev. Stat. § 116.31162(1)(b)(1). It was not until the statute was amended, and put into effect on October 1, 2015, that a foreclose sale required a statement of the amount of the super-priority lien. *See* Nev. Rev. Stat. § 116.31162 (consult footnote 1, *supra*, for a discussion of the relevance of timing).

As stated above, Red Rock described the deficiency in payment when it mailed the notice of foreclosure sale to MCM, which purportedly indicated the total amount due to cure the deficiency ($4,331.70). (ECF No. 73-9 at 17–19).

MCM elected not to pay the amount of of the lien so as to preserve its interest in the property and then later seek a refund of any difference from the super-priority amount. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund); (ECF No. 70). Had MCM paid the amount set forth in the notice of default ($4,331.70), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

**James C. Mahan**
**U.S. District Judge**

- 11 -

Based on the foregoing reasons, the court will deny MCM's motion for summary judgment as it relates to failure to identify the super-priority portion of the lien.

*5. Takings clause of the United States and Nevada Constitutions*

MCM contends that NRS 116.3116 *et seq.* violates the Fifth Amendment takings clause. (ECF No. 70 at 23–25). The takings clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V; Nev. Const. art. 1, § 8(6). MCM's contention, however, has been specifically rejected. *See, e.g., Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017) ("[T]he extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses.").

Therefore, the court will deny MCM's motion for summary judgment as it relates to the takings clause.

**IV.  Conclusion**

In sum, MCM's renewed motion for summary judgment regarding quiet title will be denied because MCM's various arguments are ultimately unpersuasive.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that MCM's renewed motion for summary judgment (ECF No. 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that MCM's claim for unjust enrichment be, and the same hereby is, DISMISSED without prejudice.

DATED July 20, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 12 -