UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MCM CAPITAL PARTNERS, LLC, | Case No. 2:15-CV-1154 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SATICOY BAY LLC SERIES 6684 CORONADO CREST, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff/counterdefendant MCM Capital Partner, LLC's ("MCM") renewed motion for summary judgment. (ECF No. 88). Defendant Red Rock Financial Services, LLC ("Red Rock") and defendant/counterclaimant Saticoy Bay LLC Series 6684 Coronado Crest ("Saticoy Bay") filed responses (ECF Nos. 91, 92), to which MCM replied (ECF No. 94).

Also before the court is Saticoy Bay's motion for summary judgment. (ECF No. 90). MCM filed a response (ECF No. 93), to which Saticoy Bay replied (ECF No. 95).

**I.     Facts**

This case involves a dispute over real property located at 6684 Coronado Crest Avenue, Las Vegas, Nevada 89139 ("the property"). (ECF No. 70 at 4).

On August 22, 2006, Joseph L. Stimach and Sharon L. Stimach obtained a loan from Republic Mortgage, LLC in the amount of $329,000, which was secured by a deed of trust, recorded on August 30, 2006. (*Id.*).

On April 20, 2010, defendant Red Rock, acting on behalf of Coronado Ranch, recorded a notice of delinquent assessment lien, stating an amount due of $791.12. (*Id.* at 5). On July 20,

**James C. Mahan**
**U.S. District Judge**

2010, Red Rock recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,768.77. (*Id.*). MCM did not receive either notice as it did not yet have a recorded interest. *See* (*id.*).

The deed of trust was first assigned to BAC Home Loans Servicing LP, on September 20, 2010. (ECF No. 17 at 3). The deed of trust was then assigned to MCM on behalf of Ventures Trust 2013 I-H-R ("Ventures Trust"), which MCM recorded on February 19, 2015. (ECF No. 17 at 3).

Then, on March 30, 2015, Red Rock recorded a notice of foreclosure sale, stating an amount due of $4,331.70 and scheduling the sale for May 11, 2015. (*Id.* at 3–4). Red Rock mailed a copy of the notice to MCM via first class mail. (ECF No. 73-9 at 17–19).

On May 11, 2015, Red Rock conducted the foreclosure sale, and defendant Saticoy Bay purchased the property for $21,000. (ECF No. 17 at 4). A foreclosure deed in favor of Saticoy Bay was recorded on June 15, 2015. (*Id.*).

## II. Procedural History

On July 7, 2015, MCM filed the operative complaint, alleging two claims for relief: (1) quiet title judgment against defendants; and (2) unjust enrichment against Saticoy Bay. (*Id.* at 5–6). Defendant Red Rock filed an answer to the amended complaint, (ECF No. 25), and defendant Saticoy Bay filed an answer and counterclaim against MCM, (ECF No. 27). On August 31, 2015, MCM filed an answer to Saticoy Bay's answer and counterclaim. (ECF No. 30).

On August 4, 2016, the court entered an order denying MCM's motion for summary judgment, (ECF No. 50), Coronado Ranch's motion to dismiss, (ECF No. 32), and Saticoy Bay's motion for summary judgment, (ECF No. 49), without prejudice to afford the Nevada attorney general the opportunity to intervene on behalf of the state of Nevada for presentation of argument on the constitutionality of NRS 116.3116, which is at issue in this case. (ECF No. 65).

On July 20, 2017, the court entered an order denying MCM's renewed motion for summary judgment regarding its quiet title claim. (ECF No. 81).

On September 8, 2017, the court granted the parties' joint motion to re-open dispositive motion briefing, (ECF No. 83), pursuant to Fed R. Civ. P. 6(b)(2) and Local Rule IA 6-1.

James C. Mahan
U.S. District Judge

- 2 -

In the instant filing, MCM again renews its motion for summary judgment regarding its quiet title claim. (ECF No. 88). Defendant Saticoy Bay also renews its motion for summary judgment. (ECF No. 90).

**III.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**IV.     Discussion**

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that

its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

In the instant motion, MCM seeks to quiet title as to the property and asserts the following four arguments: (1) Coronado Ranch is a "limited-purpose association" as defined by NRS 116.1201(6)(a)(1) and NAC 116.090, and therefore its lien did not qualify for super-priority lien status pursuant to NRS 116 and did not extinguish Ventures Trust's first deed of trust; (2) in the alternative, if Coronado Ranch did have super-priority rights, evidence indicates that the foreclosure sale was for the sub-priority portion of its lien; (3) the foreclosure sale was conducted in a commercially unreasonable manner and is therefore invalid; and (4) the Ninth Circuit held NRS 116.3116 facially invalid in *Bourne Valley*, and therefore the foreclosure sale conducted pursuant thereto should also be deemed invalid. (ECF No. 88 at 8, 12, 15, 18). *See Bourne Valley Court Trust v. Wells Fargo Bank, NA*, 832 F.3d 1154 (2016).

Plaintiff MCM's third and fourth arguments are duplicative of arguments that it has already made in its previous motion for summary judgment. *See* (ECF Nos. 70, 88). The court has already considered these arguments and denied MCM's motion for summary judgment as it relates thereto. *See* (ECF No. 81). Therefore, as MCM has not offered any new evidence in support of these arguments, the court will not consider them again.

However, MCM's first and second arguments present new theories upon which its claim for quiet title may be granted. Because the court can adequately rule on MCM's motion for summary judgment based solely on its first argument, namely, that Coronado Ranch is a "limited-purpose association" and thus falls outside the ambit of NRS 116, it will not consider MCM's alternative argument that the foreclosure sale was for only the sub-priority portion of its lien. Accordingly, the court will now consider MCM's first and only relevant argument.

*a. Coronado Ranch is a "limited-purpose association"*

In its motion for summary judgment, MCM argues that Coronado Ranch meets the definition of a "limited-purpose association" pursuant to NRS 116.1201. (ECF No. 88 at 8). Such

"limited purpose associations" are exempted from the scope of NRS 116.3116. Nev. Rev. State § 116.1201(2) ("This chapter does not apply to: . . . (a) A limited-purpose association. . .").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Accordingly, MCM argues, because Coronado Ranch is a "limited-purpose association," the foreclosure sale conducted by Coronado Ranch did not enjoy the super-priority lien status afforded to HOAs pursuant to NRS 116, and thus did not extinguish Ventures Trust's first deed of trust on the property. (ECF No. 88 at 8).

To support its argument that Coronado Ranch is a "limited-purpose association" pursuant to NRS 116.1201, MCM asserts that Coronado Ranch's governing documents, namely, the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Coronado Ranch Landscape Maintenance Corporation ("CC&Rs"), establish that Coronado Ranch

meets the definition of a "limited-purpose association" under the statute and the Nevada Administrative Code's interpretation of the statute. (ECF No. 88 at 8–10).

NAC 116.090 contains interpretive guidance for the type of "limited-purpose association" implicated here. It states:

> **NAC 116.090 "Limited-purpose association" interpreted.**
> 1. An association is a limited-purpose association pursuant to subparagraph (1) of paragraph (a) of subsection 6 of NRS 116.1201 if:
>    (a) The association has been created for the sole purpose of maintaining the common elements consisting of landscaping, public lighting or security walls, or trails, parks and open space;
>    (b) The declaration states that the association has been created as a landscape maintenance association; and
>    (c) The declaration expressly prohibits:
>       (1) The association, and not a unit's owner, from enforcing a use restriction against a unit's owner;
>       (2) The association from adopting any rules or regulations concerning the enforcement of a use restriction against a unit's owner; and
>       (3) The imposition of a fine or any other penalty against a unit's owner for a violation of a use restriction.

The court will now consider whether Coronado Ranch is a "limited-purpose association" in accordance with the definition provided above.

*i.   The association as it pertains to NAC 116.090(a)*

NAC 116.090(a) requires that, to be a "limited-purpose association," the association must have been "created for the sole purpose of maintaining the common elements consisting of landscaping, public lighting or security walls, or trails, parks and open space." Nev. Admin. Code § 116.090(a). Plaintiff MCM argues that Coronado Ranch's CC&Rs demonstrate at numerous places therein that the association was established "for the limited purpose of identifying and establishing each Owner's maintenance and Assessment obligations for the Common Elements and providing for the maintenance and repair of said Common Elements." (ECF No. 88 at 9) (citing (ECF No. 89-4 at 1)).

In its response, defendant Saticoy Bay argues that Coronado Ranch was not established for this "sole purpose," pointing to a number of provisions within the CC&Rs that allegedly confer additional rights and responsibilities upon Coronado Ranch beyond those required to maintain the common elements of the community. (ECF No. 92 at 4–6).

However, the CC&Rs unambiguously establish the following:

> NOW, THEREFORE, Declarant hereby records this Declaration for the limited purpose of identifying and establishing each Owner's maintenance responsibilities and Assessment obligations for the Common Elements and providing for the maintenance and repair of said Common Elements. . . (ECF No. 89-4 at 1).
>
> DECLARANT FURTHER DECLARES that inasmuch as the Common Elements within the Coronado Ranch Landscape Maintenance Corporation does [sic] not exceed fifteen [percent] (15%) of the real Property contained therein and as expressly stated by this Declaration the Uniform Common Interest Ownership Act, which is codified in the Nevada Revised Statutes ("NRS") Chapter 116, does not apply to this development, except as set forth herein. . . (*Id.* at 2).
>
> . . . **Notwithstanding, anything in this Declaration to the contrary, the Corporation shall not have the power to enforce the provisions contained in the Protective Covenants**. . . (*Id.* at 9) (emphasis in original).
>
> All of the property shall be held, used and enjoyed subject to the limitations and restrictions set forth in the Protective Covenants. However, as set forth in Section 2.2 of this Declaration, *the Corporation shall not have the power to enforce the provisions contained in the Protective Covenants.* (*Id.* at 24) (emphasis in original).

Therefore, Coronado Ranch's own declaration establishes its intent to create an association "for the sole purpose of maintaining the common elements consisting of landscaping, public lighting or security walls, or trails, parks and open space." The declaration further establishes its intent to disavow any further rights or duties to enforce the remaining provisions of the CC&Rs. *See* Nev. Admin. Code § 116.090.

The provisions of the CC&Rs allegedly granting Coronado Ranch additional rights and duties to which Saticoy Bay cites do not alter this result. Saticoy Bay argues that Article 15.1 of the CC&Rs allows Coronado Ranch to prosecute "an action to recover sums due for damages, injunctive relief, foreclosure of any Lien, or any combination thereof." (ECF No. 92 at 5). However, as MCM correctly points out, this provision states only that failure to comply with the CC&Rs permits relief, but does not state that Coronado Ranch is entitled to that relief, or that it may prosecute an action for said relief. *See* (ECF No. 89-4 at 37).

Next, Saticoy Bay argues that provisions within the CC&Rs relating to restrictions on individual lots, eminent domain, annexable territory, and the right and duty of owners to maintain

insurance extend Coronado Ranch's rights and duties beyond the scope of a landscape maintenance association. (ECF No. 92 at 5) (citing (ECF No. 89-4 at 25, 28, 35–36)). However, as MCM correctly argues and the CC&Rs demonstrate, these provisions do not confer any right or duty upon Coronado Ranch to enforce the restrictions therein. *See supra*, (ECF No. 89-4 at 1). Indeed, the CC&Rs make clear that Coronado Ranch was created for the sole purpose of maintaining and repairing the common elements of the community. *See supra*, (ECF No. 89-4 at 9).

    *ii.    The association as it pertains to NAC 116.090(b)*

NAC 116.090(b) requires that, to be a "limited-purpose association," the association's declaration must state that the association has been created as a landscape maintenance association. Nev. Admin. Code § 116.090(b). Plaintiff MCM asserts, and defendant Saticoy Bay does not dispute, that the CC&Rs contain the requisite declaration pursuant to NAC 116.090(b), namely that "it is the desire and intention of Declarant to create a Landscape Maintenance Corporation. . ." (ECF No. 89-4 at 1). Accordingly, based on the evidence presented and the parties' arguments, the court finds that this provision has been satisfied.

    *iii.    The association as it pertains to NAC 116.090(c)*

NAC 116.090(c) requires that, to be a "limited-purpose association," the association's declaration must expressly prohibit:

> (1) The association, and not a unit's owner, from enforcing a use restriction against a unit's owner;
> (2) The association from adopting any rules or regulations concerning the enforcement of a use restriction against a unit's owner; and
> (3) The imposition of a fine or any other penalty against a unit's owner for a violation of a use restriction.

Nev. Admin. Code § 116.090(c).

In its response, defendant Saticoy Bay cites a litany of rules, regulations, and requirements to which individual lot owners are subject within the CC&Rs. (ECF No. 92 at 7–8). However, the fact that such rules, regulations, and requirements exist does not answer the question of whether the association's declaration expressly prohibits the association from either enforcing or providing for the enforcement of such regulations.

The operative provisions of the CC&Rs for purposes of NAC 116.090(c) are the multiple provisions, addressed above, which expressly state that Coronado Ranch does not have such enforcement power. Importantly, the provisions of the CC&Rs prohibiting Coronado Ranch

from enforcing the restrictions contained therein do not prohibit any unit's owner from enforcing its provisions. *See* Nev. Admin. Code § 116.090(c)(2).

Therefore, because Coronado Ranch's CC&Rs establish that Coronado Ranch meets the definition of a "limited-purpose association" pursuant to NAC 116.090, the court finds that Coronado Ranch is a "limited-purpose association" pursuant to NRS 116.1201. Accordingly, NRS 116 and the super-priority lien status conferred to HOAs therein, do not apply to Coronado Ranch.

### *b. The effect of the foreclosure sale*

Because Coronado Ranch is exempt from NRS 116, no super-priority lien existed in the foreclosure sale as a matter of law. Furthermore, with respect to foreclosures, the CC&Rs expressly preserve first deeds of trust, declaring:

> [n]otwithstanding any other provision of this Declaration, *no amendment or violation of this Declaration shall operate to defeat or render invalid the rights of the Beneficiary under any Deed of Trust upon one (1) or more Lots made in good faith and for value*, provided that after the foreclosure of any such Deed of Trust such Lot(s) shall remain subject to this Declaration, as amended. For purpose of this Declaration, 'first Mortgage' shall mean a Mortgage with first priority over other Mortgages or Deeds of Trust on a Lot, and 'first Mortgagee' shall mean the Beneficiary of a first Mortgage.

(ECF No. 89-4 at 29) (emphasis added).

Accordingly, Coronado Ranch is neither entitled to super-priority rights under NRS 116 nor the CC&Rs. Because Ventures Trust's deed of trust was recorded on the property on August 30, 2006, approximately four years before Coronado Ranch's recorded lien for delinquent assessments, Coronado Ranch's lien was a later-recorded lien and subordinate to Ventures Trust's deed of trust.

Consequently, when defendant Saticoy Bay purchased the property at the foreclosure sale, it took title subject to Ventures Trust's first deed of trust. Plaintiff is therefore entitled to summary judgment on its declaratory relief and quiet title claims.[1]

### *c. Other outstanding motions*

Defendant Saticoy Bay filed a cross-motion for summary judgment seeking quiet title and declaratory relief. (ECF No. 90). As the court will grant plaintiffs' motion for summary

---

[1] The court will not address plaintiff's unjust enrichment claim, which appears to be pled in the alternative and is not addressed in plaintiff's motion for summary judgment.

James C. Mahan
U.S. District Judge

- 10 -

judgment on its claims for quiet title and declaratory relief for the reasons discussed above, the court will deny defendant's motion for summary judgment.

V. **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff MCM Capital Partners LLC's motion for summary judgment (ECF No. 88) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Saticoy Bay LLC Series 6684 Coronado Crest's motion for summary judgment (ECF No. 90) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff shall prepare a proposed judgment consistent with this order and submit it to the court within twenty-one (21) days of the filing of this order.

DATED August 29, 2018.

                                                    /s/ James C. Mahan
                                                  UNITED STATES DISTRICT JUDGE